**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (Admitted *Pro Hac Vice*)
dscheper@scheperkim.com
WILLIAM H. FORMAN (Admitted *Pro Hac Vice*)
wforman@scheperkim.com
GREGORY A. ELLIS (Admitted *Pro Hac Vice*)
gellis@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

S. BRENT VOGEL, ESQ. NV Bar No. 6858
brent.vogel@lewisbrisbois.com
ALAYNE M. OPIE, ESQ. NV Bar No. 12623
alayne.opie@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6385 S. Rainbow Blvd., Suite 600
Las Vegas, Nevada 89118
Telephone: 702-893-3383; Facsimile: 702-893-3789

*Attorneys for Defendant Narconon Fresh*
*Start dba Rainbow Canyon Retreat ("Fresh Start")*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAVID WELCH, a Texas Citizen; STACY WELCH, a Texas Citizen; and JACK WELCH, a Texas Citizen, <br><br> Plaintiffs, <br><br> vs. <br><br> NARCONON FRESH START d/b/a RAINBOW CANYON RETREAT, a California Corporation; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL; NARCONON INTERNATIONAL and DOES 1-100, ROE Corporations I-X, inclusive, <br><br> Defendants. | CASE NO. 2:14-cv-00167-JCM-CWH <br><br> **[REDACTED] DEFENDANT NARCONON FRESH START DBA RAINBOW CANYON RETREAT'S MOTION TO COMPEL FURTHER DEPOSITION OF PLAINTIFF JACK WELCH** <br><br> **ORAL ARGUMENT REQUESTED** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 30 and 37, Defendant Narconon Fresh Start ("Fresh Start") hereby moves the Court for an Order compelling Plaintiff Jack Welch to appear for a second day of deposition. This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of William H. Forman and the exhibits thereto, and all records that the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Jack Welch ("Welch" or "Jack") instituted this lawsuit about his drug addiction and then refused to answer entire categories of questions about his drug addiction at his deposition. Specifically, ███████████████████ █████████████████████████████████████████████████████ ████████████████████████████ Then, the day *after* his deposition, Welch's lawyers for the first time produced hundreds of pages of his medical records, that are highly pertinent to the alleged injuries for which Welch seeks damages. These twin abuses have frustrated appropriate discovery, and warrant a second day of Welch's deposition.

Welch's deposition should be reopened. He should be required to answer all relevant questions ████████████████, and Fresh Start should have the opportunity to ask him about the previously-concealed medical records.

## II. FACTUAL ALLEGATIONS AND DISCOVERY POSTURE

### A. Factual Allegations

In August 2013, Plaintiffs Stacy and David Welch were looking for a drug rehabilitation program in which to enroll their son, Jack.[1] (Docket No. 23, Second

---

[1] At the time, Jack Welch was already enrolled in a different drug treatment program called The Right Step, which has not been named as a party to this action.

Amended Complaint ("SAC") at ¶ 13.)  Soon thereafter, Jack enrolled in Fresh Start's treatment program.  (*Id.* at ¶ 21.)  He left the Fresh Start facility in November 2013, and the Welches jointly filed this action in January 2014.[2]  (*Id.* at ¶¶ 53-54.)

Plaintiffs allege, among other things, that Fresh Start did not provide adequate drug treatment.  (*Id.* at ¶¶ 62-63.)  They also allege that Fresh Start's rehabilitation program caused Jack to suffer tremors, and that the aftereffects of the program impaired his social life.  (*Id.* at ¶ 47.)

**B.      Initial Discovery and Depositions**

The parties exchanged initial Rule 26 disclosures in April 2014.  (Declaration of William H. Forman at ¶ 2.)  Fresh Start propounded initial discovery requests, including document requests, shortly thereafter.  All three Plaintiffs replied to Fresh Start's initial Interrogatories and Requests for Production of Documents on July 7, 2014.  (*Id.* at ¶ 3.)  A series of requests and productions ensued, until Fresh Start deposed Plaintiffs Stacy and David Welch on January 6 and 7, 2015, respectively. (*Id.* at Ex. B, Stacy Welch Deposition Transcript at 1:19; *and* Ex. B, David Welch Deposition Transcript at 1:19.)

The depositions addressed both their understanding of Fresh Start's treatment program, and the claims that their son had been injured by the program.  (Stacy Welch Tr. at 57:22-58:2; David Welch Tr. at 54:16-55:17.) ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

_____

[2] █████████████████████████████████████████████

████████████████████████████████████████████████

DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION

1 ███████████████████████████████████████████████

2 ███████████████

3      Additionally, because Plaintiffs are seeking damages for physical injury,

4 Fresh Start sought information concerning Jack Welch's history of medical care.

5 (*E.g.*, Stacy Welch Tr. at 51:14-18.)  Plaintiffs did not object to this line of inquiry,

6 answering each question posed.  (*Id.* at 51:23-53:14.)

7      **C.**    **Jack Welch Refuses to Answer Deposition Questions**

8      Jack Welch's deposition was held the following week, on February 12, 2015.

9 (Forman Decl. at Ex. A, Jack Welch Deposition Transcript at 1:18.)  Welch was

10 asked about ████████████████ and his claimed injuries.  However, after

11 consultation with counsel, Jack refused to answer a number of questions designed to

12 discover ██████████████████████████████ Specifically,

13 Jack refused to answer *any* questions concerning ██████████████████

14 ████████████████████

15                ████████████████████████████

16                ███████████████████

17                ████

18                ████████████████████████████

19                █████████

20          Mr. Ham:  Could we take a quick break, Counsel?

21          Mr. Forman:  Well, there's a question --

22          Mr. Ham:  I understand there's a question pending,

23          but I'm going to let him answer it, so. . . I'm going

24          to instruct him not to answer it.  Can we take a

25          break and I may let him answer it after the break.

26          I'd like to talk to Mr. Welch and my cocounsel.

27 (*Id.*)  After returning from a brief recess, Jack's counsel stated that "[Mr. Welch] is

28 not comfortable talking about ██████████████████████████████ He

1  further explained:

2       I can understand why, from a constitutional point of

3       view, and so he's not going to be answering questions

4       ███████████.  I don't see the relevance ███████████

5       █████ either, so I'm not in a position to disagree with Mr.

6       Welch in his decision.

7       We can agree to disagree.   We can deal with the

8       magistrate and, you know, come back if you guys want

9       to, but as far as we're concerned, as we sit here today,

10      he's happy to tell you all about ███████████████

11      ████████████████████████████████████

12      ████████████

13  ████████████

14      Relying on this reasoning, Jack refused to answer a series of questions[3]

15  relating to ████████████████████████████████████

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████  Essentially, Welch has taken the position

19  that Fresh Start must take him at his word ██████████████████████

20  ██████████████████████  This position is particularly troublesome given

21  Welch's evasiveness on the subject.[4]

22

23  _____

24      [3] A complete list of at-issue questions is included in Appendix A hereto.
        [4] ████████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████

28  ████████████████████████████████████████████

                                    4
                DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION

### D.    Plaintiffs' Post-Deposition Production of Pre-Deposition Documents

The day after Jack Welch's stonewalling, Plaintiffs "supplemented" their initial Rule 26 disclosures with dozens of medical records, spanning hundreds of pages.  (Forman Decl. at Ex. D, February 13 Supplement at 16-18.[5])  But Fresh Start had specifically asked for all such medical records in its initial Request for Production of Documents over seven months earlier.  The initial Request for Production sought, among other things:

- "[a]ny and all documents constituting, relating or referring to the nature, extent, and/or amount of medical expenses or damages allegedly incurred . . . as a result of the incident alleged in your Complaint";

- "[a]ny and all x-rays, CT scans, films, MRIs, myelograms, fluoroscopies, or other medical photographs in your possession, custody and/or control that may be involved in the alleged negligence delineated in your complaint";

- "[a]ny and all correspondence between [Mr. Welch] and any treating, consulting, or practicing physician.  This request includes . . . requests for copies of medical records, responses to such requests, prescriptions, letters for appointments, letters for follow-up treatment, letters of referral, letters for consultation, letters for hospitalization, letters of billing, letters of collection, or personal correspondence

(Forman Decl. at Ex. E, Response to Request for Production of Documents Nos. 9, 12, 16.)  Jack responded to these Requests on July 7, 2014, stating that he would "produce responsive documents."  (*Id.* at Nos. 9, 12.)  Indeed, he explicitly stated

---

[5] Plaintiffs' counsel noted all amendments and additions to the disclosures by formatting them in bold face text.

that he would "produce medical and billing records for Jack Welch." (*Id.* at No. 16.)

The late disclosure also identified fifteen medical providers who had treated Jack Welch during the relevant time period:  (1) Dr. Sam Lingamfelter, at Clear Lake Family Physicians; (2) Clear Lake Regional Hospital; (3) Dr. Robert N. Earle; (4) The Right Step; (5) Institute for Progressive Medicine, Internal Medicine & Wellness; (6) Dr. Sam Lingamfelter, at Snow Canyon Clinic; (7) North Star Imaging; (8) LabCorp; (9) Meadow Valley Pharmacy; (10) Lincoln County Medical Associates; (11) Gulf Coast MRI & Diagnostic; (12) River Oak Diagnostics; (13) Lakeside MRI & Diagnostic Center; (14) Dominion Diagnostics; and (15) Quest Diagnostics.  (February 13 Disclosure Supplement at 3-5.)[6]

As with the document production, the identity of each of these providers was responsive to Fresh Start's earlier discovery requests.  In its First Set of Interrogatories, Fresh Start asked Mr. Welch to "[s]tate the name and address of each medical practitioner who examined or treated [him] for any physical, mental, emotional, psychiatric or psychological condition during the five-year period immediately before the date of the incident complained of, and since the incident. . . ."  (Forman Decl. at Ex. F, Supplemental Response to Interrogatory No. 8.)  Even in his supplemental response, provided more than five months after the request was posed, Mr. Welch simply responded "Plaintiffs produce Jack Welch's medical bills and records."  (*Id.*)

---

[6] While Fresh Start had previously obtained information concerning seven of these providers, the remainder were entirely new.  Fresh Start had previously obtained information concerning:  (3) Dr. Robert N. Earle, (4) The Right Step, (5) Institute for Progressive Medicine, Internal Medicine & Wellness, (6) Dr. Sam Lingamfelter, at Snow Canyon Clinic, (7) North Star Imaging, (9) Meadow Valley Pharmacy, and (10) Lincoln County Medical Associates.

In addition, one of the providers, Dr. Sam Lingamfelter, was identified twice by Plaintiffs:  first in affiliation with Clear Lake Family Physicians, and second in affiliation with Snow Canyon Clinic.  While Fresh Start had previously obtained information identifying Snow Canyon Clinic, it was unaware of Clear Lake Family Physicians before the untimely production.

DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION

In total, Plaintiffs' document dump included 18 separate sets of medical records, 16 sets of billing records, and the results of 2 MRIs, 1 EEG, and 1 CT scan. (February 13 Disclosure at 16-18.)  The medical and billing records alone totaled 796 pages, and 441 of those pages—along with both MRIs—came from previously undisclosed medical providers.  (*Id*.)

Plaintiffs knew about these medical providers and records long before they were disclosed.  Jack Welch was actively visiting several providers throughout 2014.  For instance, one of the unrevealed MRIs was taken on January 15, 2014, (Forman Decl. at Ex. G at 1, JWELCH-GULFCOAST-MEDICAL-000001), while Quest Diagnostics provided records from as late as December 4, 2014.  (*Id*. at 4, JWELCH-QUEST-MEDICAL-000005.)  Moreover, it appears that Plaintiffs' counsel was in possession of many of the records up to several months before Jack Welch's deposition was taken.  For instance:

1. Time-and-date information, apparently added by a printer, from Gulf Coast MRI & Diagnostics indicates that its medical and billing records were provided to Plaintiffs on October 14, 2014.  (*Id*. at 1, JWELCH-GULFCOAST-MEDICAL-000001.)

2. The custodian of records affidavit from Lakeside MRI & Diagnostic Center indicates its medical and billing records were provided to Plaintiffs on January 9, 2015.  (*Id*. at 8, JWELCH-LAKESIDE-MEDICAL-000001.)

3. The custodian of records affidavit from Quest Diagnostic indicates that its medical and billing records were provided to Plaintiffs on either January 16 or January 23, 2015. (*Id*. at 2, JWELCH-QUEST-MEDICAL-000001; *Id*. at 5, JWELCH-QUEST-BILLING-000001.)

4. The custodian of records affidavit from Clear Lake Family Physicians indicates that its medical and billing records were provided to Plaintiffs' attorney on January 21, 2015.  (*Id*. at 6, JWELCH-

CLEARLAKE-MEDICAL-000002.)

5.  The custodian of records affidavit from Dr. M. Christina Ivan, who has still not been formally disclosed, indicates that her medical and billing records were provided to Plaintiffs on January 29, 2015. (*Id.* at 12, JWELCH-IVAN-MEDICAL-000009.)

6.  The custodian of records affidavit from LabCorp indicates that its medical and billing records were provided to Plaintiffs' attorney on February 3, 2015. (*Id.* at 9, 11, JWELCH-LABCORP-MEDICAL-000001, 000003.)

7.  An invoice from the Clear Lake Regional Medical Center to Plaintiffs' attorney indicates that its medical and billing records were provided no later than February 6, 2015. (*Id.* at 14, JWELCH-CLREGIONAL-MEDICAL-000001).

8.  Time-and-date transmittal information, apparently added by a fax machine, from the Dominion Diagnostics records indicates that its medical and billing records were provided to Plaintiffs' attorney on February 10, 2015, at 11:36 AM. (*Id.* at 13, JWELCH-DOMINION-MEDICAL-000001.)

Among other things, these new records include an MRI taken less than two months after Jack Welch left Fresh Start's program. This MRI reveals no injuries. (*Id.* at 1, JWELCH-GULFCOAST-MEDICAL-000001.) The new records also reveal that Jack Welch suffered neck spasms in February 2011, several years before he enrolled in Fresh Start's treatment program. (*Id.* at 7, JWELCH-CLEARLAKE-MEDICAL-000079.) Because none of these documents were provided until after all Plaintiffs had been deposed, Fresh Start was unable to question any Plaintiffs about their contents, or what they might mean for Plaintiffs' physical injury claims.

**E.    Compliance with Notification Requirements**

Fresh Start's attorneys have met and conferred with Jack Welch's lawyers

1   multiple times since his deposition.  On April 27, 2015, Artemus W. Ham and Ryan

2   Hamilton were sent a letter explaining Fresh Start's need for a second day of

3   deposition.  (Forman Decl. at Ex H.)  Mr. Ham spoke with William Forman, Fresh

4   Start's attorney, about the possibility that Jack might appear for a reopened

5   deposition.  (*Id.* at ¶ 8.)  And on May 4, 2015, Mr. Ham ruled out that same

6   possibility.  (*Id.* at Ex. I.)

7   **III.   ARGUMENT**

8       **A.   Legal Standard**

9       In the absence of a stipulation, a party must obtain leave from the court to

10  reopen a deposition.  Fed. R. Civ. P. 30(a)(2)(A) (ii).  "A party seeking discovery

11  may move for an order compelling an answer" if "a deponent fails to answer a

12  question asked under Rule 30 or 31."  Fed. R. Civ. P. 37(a)(3)(B)(i).  Likewise, the

13  late production of documents after deposition may "entitle[]" a party, "if it wishes,

14  to reopen [that] deposition."  *JS Products, Inc. v. Kabo Tool Co.*, No. 2:11-CV-

15  01856-RCJ, 2014 WL 2919184, at *4 (D. Nev. June 26, 2014).

16      Whether to reopen a deposition lies within the court's discretion.  *Couch v.

17  Wan*, 2012 WL 4433470, at *3 (E.D.Cal. Sept.24, 2012) (*citing Dixon v.

18  Certainteed Corp.*, 164 F.R.D. 685, 690 (D.Kan.1996)).  "The Committee Notes to

19  the 2000 Amendments to Rule 30 explain that the party seeking a court order to

20  extend the examination, or otherwise alter the limitations, is expected to show good

21  cause to justify such an order."  *Syncora Guarantee Inc. v. EMC Mortgage Corp.*,

22  No. MC 13-80037 SI, 2013 WL 1208936, at *1 (N.D. Cal. Mar. 25, 2013) (internal

23  quotations omitted).

24      **B.   There Is Good Cause to Reopen Jack Welch's Deposition**

25          *1.   Jack Welch Improperly Refused to Answer Questions During His*

26          *Deposition*

27      Plaintiff Jack Welch improperly refused to answer a number of questions

28  during his deposition.  The Court should therefore order the deposition reopened and

compel him to answer those questions.  *See Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 581 (D. Nev. 2011) ("Rule 37(a)(3)(C) permits a party asking questions for which answers are not provided during a deposition to . . . complete the deposition . . . before moving for an order compelling disclosure.")

The Federal Rules are specific as to when counsel may instruct a deponent not to answer a question.  Rule 30 provides, in pertinent part:  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2); *see Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 580-81 (D. Nev. 2011) ("Counsel may instruct a witness not to answer a deposition question only under three circumstances: (1) 'when necessary to preserve a privilege;' (2) 'to enforce a limitation on evidence directed by the court;' or (3) to protect a witness from an examination 'being conducted in bad faith or in such a  manner as unreasonably may annoy, embarrass, or oppress the deponent or party.'") (*quoting* Fed. R. Civ. P. 30(c)(2) & (d)(3)(A)).  "Simply put, there are very few circumstances in which an instruction not to answer a deposition question is appropriate."  *Brincko*, 278 F.R.D. at 581.  None of those circumstances is present in this case.[7]

Jack Welch was asked questions about ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████

_____

[7] Likely aware of these limitations, Plaintiffs' counsel was very careful in how he attempted to justify Jack's refusal to answer questions:  initially, he stated that he instructed Jack not to answer (Jack Welch Tr. 32:18-19), but then he backtracked and merely noted that he was "not in a position to disagree" with Jack's refusal to answer.  (*Id.* 33:12-13.)  To the extent counsel's comments are construed as an instruction not to answer, the instruction was clearly improper.  And regardless of how counsel's comments are construed, there was no legal basis for Jack's refusal to answer the questions.

1 ██████████████████████████

2 █████████████████████████

3 ████████████████████████████████████

4 ███████████████████████████████

5 ████████████████████████████████████████

6 ██████████████████████████████████████████████

7 ███████████████████████████████████████

8 ████████████████████████████████████████

9 ███████████████

10       Plaintiffs' counsel, Artemus W. Ham, offered two justifications for Jack's

11 refusal to answer these questions.  First, he believed that, "from a constitutional

12 point of view," ██████████████████████ were objectionable.  ██████████████

13 He later clarified that this objection was "based on the discussion" he had with his

14 client "about the Fifth Amendment."  (*Id.* at 130:9-11.)  But Jack Welch did not

15 invoke the Fifth Amendment ████████████████████████████████████

16 ████████████████████████████ And Jack Welch █████████████████████

17 ████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████

21 Accordingly, any Fifth Amendment objection should be dismissed out of hand.

22       Second, Mr. Ham said that he did not "see the relevance ██████████████

23 ███████████████████████ But "relevance" is a broad concept under the Federal

24 Rules.  Pursuant to Rule 26, a party is entitled to any discovery "regarding any

25 nonprivileged matter that is relevant to any party's claim or defense," including any

---

26

27     [8] Moreover, there is a protective order in this case ██████████████████████

28 ███████████████████████████████████████████████

1   discovery that "appears reasonably calculated to lead to the discovery of admissible

2   evidence."  Fed.R.Civ.P. 26(b)(1). "The Federal Rules of Civil Procedure creates a

3   'broad right of discovery' because 'wide access to relevant facts serves the integrity

4   and fairness of the judicial process by promoting the search for the truth.'"  *Epstein*

5   *v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir.1995) (*quoting Shoen v. Shoen*, 5 F.3d

6   1289, 1292 (9th Cir.1993)); *see also* ███████████████████████

7   ██████████████████████████████████████████

8   ██████████████████████████████████

9   ███████████████████████████████████████████

10  ████████████████

11      As Defense counsel suggested during Jack's deposition, ██████████

12  ███████████████████  implicates the effectiveness of Fresh Start's drug

13  rehabilitation program.  █████████████████████████████

14  ████████████████████████  Since Plaintiffs have alleged

15  damages based on the ineffectiveness of Fresh Start's program, this is a critical area

16  of inquiry.  The ████████████████████████████████  is,

17  therefore, relevant.

18      Similarly, information pertaining to ████████████  before (and after)

19  his interaction with Fresh Start could explain any injuries he may currently be

20  suffering that he blames on Fresh Start.  These injuries purportedly include memory

21  loss, depression, cognitive deficits, and tremors. (Forman Decl. at Ex. F,

22  Supplemental Response to Interrogatory No. 7.) ████████████████████

23  ██████████████████████████████████████

24  ██████████████████████████████████████

25  █████████████████████████████████████  At

26  the least, it might reasonably "lead to the discovery of admissible evidence."  Fed.

27  R. Civ. P. 26(b)(1).  In fact, Jack himself implicitly admitted that this area of inquiry

28  was relevant by describing ██████████████████████████████

█████████████████████ Fresh Start only wishes to know ████████

█████████████████████████████████████

### 2.     *Plaintiffs' Delayed Document Production Also Requires Reopening of the Deposition*

Additionally, Plaintiffs sandbagged Fresh Start by disclosing hundreds of pages of medical records the day after Jack Welch's deposition.  These documents include significant new information concerning Plaintiffs' claims.  For instance, Jack Welch claims to suffer from tremors caused by Fresh Start's treatment program.  But the new records, from newly disclosed medical providers, include an MRI taken less than two months after Jack left Fresh Start's program.  This MRI reveals *no injuries*.  (Forman Decl. at Ex. G at 1, JWELCH-GULFCOAST-MEDICAL-000001.)  Likewise, the medical records reveal that Jack Welch suffered neck spasms in February 2011, several years before he enrolled in Fresh Start's treatment program, and before Jack now alleges he first developed tremors.  (*Id.* at 7, JWELCH-CLEARLAKE-MEDICAL-000079.)

Most distressingly, many of these documents were evidently obtained weeks or months before Welch's deposition.  In other words, Plaintiffs had the documents, but concealed them until after Fresh Start would no longer be able to ask questions about them.

Numerous courts, throughout both this District and Circuit, have found that tardy disclosures may provide grounds for reopening a deposition.  As Judge Jones found in 2011, when recently produced documents "should have been disclosed . . . prior to . . . deposition so that [defendant's] counsel could have examined [the deponent] about them," the defendant was "entitled, if it wishe[d], to reopen [that] deposition."  *JS Products, Inc. v. Kabo Tool Co.*, No. 2:11-CV-01856-RCJ, 2014 WL 2919184, at *4 (D. Nev. June 26, 2014).  Reopening a deposition is an especially appropriate remedy where, as here, the adverse party had sufficient time to disclose its documents in advance of the deposition.  *Syncora Guarantee Inc. v.*

1  *EMC Mortgage Corp.*, No. MC 13-80037 SI, 2013 WL 1208936, at *2 (N.D. Cal.
2  Mar. 25, 2013) (finding good cause to reopen a deposition where the plaintiff "*did*
3  *not* choose to depose [the witness] relatively early in discovery") (emphasis added).

4      Jack Welch's deposition occurred almost seven months after initial
5  disclosures were exchanged.  He had had more than enough time to identify his
6  medical providers and produce his medical records.  His counsel had the documents
7  at issue up to several months before they were produced.  "[T]he fact of the matter"
8  is that Fresh Start "did not have the opportunity to question" Jack Welch about the
9  February 13, 2015, disclosures "solely due to [Plaintiffs'] failure to produce them."
10  *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL
11  1882260, at *7 (S.D. Cal. May 3, 2013).  Since many of the medical providers who
12  provided these new documents had not previously been disclosed, the additional
13  disclosures "could not have [been] obtained from another source . . . provid[ing] the
14  requisite good need for re-deposing the witness[]."  *Id.*

15      *3.*    *Conclusion*

16      Fresh Start's request is simple.  Plaintiff Jack Welch's deposition should be
17  reopened.  Welch should be required to answer all questions concerning ███████
18  ███, and Fresh Start should have the opportunity to ask him about his medical
19  records.

20      There is good cause to allow questioning as to both areas.  Plaintiff
21  improperly refused to answer questions regarding the first issue, and dodged
22  questioning on the second issue by the simple expedient of withholding necessary
23  information until after the deposition had concluded.  Since any additional
24  deposition would be limited to these two topics, preventing unnecessary duplication
25  of effort, good cause for reopening the deposition exists.  *See Syncora Guarantee*
26  *Inc. v. EMC Mortgage Corp.*, 2013 WL 1208936, *2–3 (N.D.Cal. March 25, 2013)
27  (finding  good cause to reopen the deposition of the witness where Plaintiff could
28  not have asked about documents that had not been produced at the time of the

1  deposition, Plaintiff did not choose to depose the witness relatively early in the

2  discovery process, and the additional deposition would be limited to discussing only

3  the new documents and not about the initial deposition).

4        **C.**    **<u>Request for Sanctions</u>**

5        Plaintiffs should also be required to pay reasonable costs and attorney's fees

6  incurred both in (1) preparing this motion and (2) reopening and conducting Jack

7  Welch's deposition.

8        At the outset, costs and attorney's fees associated with filing a motion to

9  compel may be awarded under Rule 37(a)(5), which requires a party whose conduct

10  necessitated the motion to pay the movant's reasonable expenses in making the

11  motion, including attorney's fees, unless: "(1) the motion was filed without a good

12  faith effort to resolve the dispute without court action; (2) the party's objection was

13  substantially justified; or (3) other circumstances make an award of expenses

14  unjust." *Brincko*, 278 F.R.D. at 585 (citing Fed. R. Civ. P. 37(a)(5)).  As described

15  above, Fresh Start has made a good faith effort to resolve the dispute without

16  seeking court intervention, asking Plaintiffs to stipulate to a reopened deposition.

17  Mr. Ham's "constitutionality" and "relevancy" objections were entirely without

18  merit.  And Plaintiffs have offered no explanation for their withholding and late

19  production of relevant documents.

20        The court may also order "that the cost [of a reopened deposition] be borne by

21  the party whose counsel's conduct necessitated retaking the deposition." *Brincko v.*

22  *Rio Properties, Inc.*, 278 F.R.D. 576, 581 (D. Nev. 2011) (*citing O'Brien v. Amtrak*,

23  163 F.R.D. 232 236 (E.D.Pa.1995).  Again, as described above, reopening the

24  deposition is necessary *solely* because of Plaintiffs' dilatory tactics and improper

25  refusal to answer relevant questions.  Accordingly, Fresh Start asks that it be

26  awarded costs and fees associated with further deposition preparation.

27  **IV.**  **<u>CONCLUSION</u>**

28        Fresh Start regrets having to raise this issue with the Court.  Unfortunately,

Plaintiffs' refusal to see reason has compelled this course of action.  Fresh Start respectfully asks that Jack Welch's deposition be reopened, and that Plaintiffs be required to bear the costs and fees associated with both this motion and the reopened deposition.

Dated: June 3, 2015                          SCHEPER KIM & HARRIS LLP


                                             By:    /s/ William H. Forman
                                             David C. Scheper, CA Bar 120174
                                             William H. Forman, CA Bar 150477
                                             Greg A. Ellis, CA Bar 204478
                                             601 W. Fifth Street, 12th Floor
                                             Los Angeles, CA  90071

                                             S. Brent Vogel, NV Bar No. 6858
                                             Alayne M. Opie, NV Bar No. 12623
                                             LEWIS BRISBOIS BISGAARD &
                                             SMITH LLP
                                             6385 S. Rainbow Blvd., Suite 600
                                             Las Vegas, Nevada 89118
                                             *Attorneys for Fresh Start*

DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION

1

### Appendix A:  Jack Welch's Unanswered Deposition Questions



DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION



DEFENDANT FRESH START'S MOTION TO COMPEL DEPOSITION

1

## CERTIFICATE OF SERVICE

2          Pursuant to FRCP 5(b), I certify that I am an employee of SCHEPER KIM &

3  HARRIS LLP and that on this 3rd day of June, 2015, I did cause a true copy of the

4  foregoing CERTIFICATE OF INTERESTED PARTIES to be served via the

5  CM/ECF electronic system to all parties on the service list.

6  Ryan A. Hamilton
   HAMILTON LAW
7  5125 S. Durango Dr., Ste. C Las Vegas, NV 89113
   Telephone:   (702) 818-1818
8  Facsimile:    (702) 974-1139
   Email. ryan@hamiltonlawlasvegas.com

9
   Bob Baker
10 BAKER, KEENER & NAHRA, LLP
   Nevada Bar 49255
11 633 West 5th Street, Suite 5500
   Los Angeles, CA 90071
12 Telephone:   (213)241-0900
   Email: rbaker@bknlawyers.com

13
   Robert C. McBride
14 CARROLL, KELLY, TROTTER,
   FRANZEN, McKENNA & PEABODY
15 Nevada Bar 007082
   701 N. Green Valley Parkway, Suite 200
16 Henderson, Nevada 89074
   Telephone:   (702) 792-5855
17 Facsimile:    (702) 796-5855
   Email: rcmcbride@cktfmlaw.com

18
   S. Brent Vogel
19 Alayne M. Opie
   LEWIS BRISBOIS BISGAARD & SMITH LLP
20 Nevada Bar No. 6858
   Nevada Bar No. 12623
21 6385 S. Rainbow Boulevard, Suite 600
   Las Vegas, Nevada 89118
22 Telephone: (702)893-3383
   Facsimile: (702)893-3789
23 Emai:brent.vogel@lewisbrisbois.com

24
              By: /s/Melissa Vasquez
25      An Employee of SCHEPER KIM & HARRIS LLP

26

27

28